UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DANIEL McGRAW
and SUSAN McGRAW,

        Plaintiffs,

v.         Case No. 15-C-1424

SUPERIOR AVIATION LTD.,
KUBICK AVIATION SERVICES, INC.,
and QBE INSURANCE CORP.,

        Defendants.

## DECISION AND ORDER

Plaintiffs Daniel McGraw and Susan McGraw filed suit against Superior Aviation, LTD., Kubick Aviation Services, Inc., and QBE Insurance Corp. asserting claims for compensatory and punitive damages resulting from injuries suffered due to the defendants' allegedly negligent repair and inspection of Daniel McGraw's airplane. This Court has diversity jurisdiction under 28 U.S.C. § 1332. Presently before the Court are Kubick Aviation Services Inc.'s ("Kubick") motion for summary judgment and Plaintiffs' 7(h) motion to amend the complaint. For the reasons that follow, Kubick's motion for summary judgment will be granted and Plaintiffs' motion to amend the complaint will be denied.

### BACKGROUND

Kubick entered into an Asset Purchase Agreement ("APA") with Superior Aviation, Ltd. ("Superior") on April 7, 2014. Kubick purchased nearly all of Superior's assets for the purpose of expanding its current operations and providing charter and other aviation services to the public.

Under the express terms of the APA, Kubick only purchased Superior's assets, did not assume any of Superior's liabilities, and "shall not be obligated for any liabilities incurred by [Superior] during the operation of [Superior's] business." (ECF No. 31-1, pp. 2.) Furthermore, a choice of law clause established that the agreement was to be governed, construed, and enforced in accordance with Michigan law. Plaintiffs contend the APA provided in this case is incomplete as it does not include a copy of the Operating Agreement referenced in Paragraph 5.2. (*Id*. at pp. 3.) The asset purchase sale between Kubick and Superior became final on April 18, 2014.

Prior to the completion of the sale, Superior conducted an annual inspection and performed maintenance and repairs on Daniel McGraw's amateur-built Lancair airplane. All work was completed by April 11, 2014—the day McGraw picked up the plane from Superior's facility. The Superior technician who performed the work, Alex Dupras, failed to update the plane's logbooks. McGraw requested the logbooks when he picked up his plane, but the lineman handing off the plane did not know where they were. McGraw also called on at least two other occasions in an unsuccessful attempt to retrieve the logbooks.

On May 6, 2014 after approximately five hours of flight time, McGraw's plane suffered a loss of engine power. McGraw executed a forced landing in a field near Crivitz, Wisconsin. He alleges he sustained severe injuries and that Superior caused the accident by failing to reasonably and adequately maintain his aircraft during the inspection, maintenance, and repairs. At the time of the crash, McGraw was flying to Kubick to discuss what should be done next on the plane.

After the May 6, 2014 crash, Superior employee Timothy Spreen contacted Dupras regarding the status of McGraw's logbooks. By that time, Dupras was working for Kubick as he was retained after the sale. Spreen requested that Dupras update McGraw's logbook to reflect the work Dupras

2

had done on the plane. Dupras thereafter made entries in the logbook reflecting the work he had previously performed but then backdated the entries to April 10, 2014. The parties dispute whether Dupras was acting on behalf of Kubick, Superior, Spreen, or a combination of the three at the time he updated the logbooks. The parties also dispute whether Spreen (and thus Superior) maintained possession of the logbooks following the asset sale or whether the logbooks were stored in Superior's hanger—which Kubick took control of after the sale.

Daniel and Susan McGraw filed this action on November 30, 2015. As it relates to the pending motions before the Court, Plaintiffs alleged that Kubick assumed all of Superior's liabilities by virtue of being a continuation or reincarnation of Superior. Plaintiffs also moved on November 30, 2016 to amend their complaint, alleging a negligence cause of action against Kubick. Plaintiffs alleged Kubick took possession of McGraw's logbooks after the sale, negligently failed to provide McGraw with the logbooks, and that McGraw suffered injury as a result. The matter is now before the Court on Kubick's motion for summary judgment and Plaintiffs' motion to amend the complaint.

## LEGAL STANDARD AND CHOICE OF LAW

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Where factual disputes do exist, the non-movant's version of events is accepted as true at this stage of the proceedings. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The mere existence of some factual dispute does not defeat a summary judgment motion; however, there must be a *genuine* issue of *material* fact for the cause of action to survive. *Id.* at 247–48. "Material" means that the factual dispute must be outcome-determinative under governing law. *Contreras v. City of Chicago*, 119 F.3d 1286, 1291 (7th Cir. 1997). Failure to

3

support any essential element of a claim renders all other facts immaterial. *Celotex*, 477 U.S. at 323. A "genuine" issue of material fact requires specific and sufficient evidence that, if believed by a jury, would actually support a verdict in the nonmovant's favor. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 249. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Federal courts sitting in diversity cases must apply state substantive laws and must look to the conflict of laws rules of the forum state for the applicable substantive law. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 312 U.S. 487, 496 (1941); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). In this case, the parties dispute whether Wisconsin or Michigan law controls. The APA between Kubick and Superior contains a choice of law clause specifying that the agreement was to be governed, construed, and enforced in accordance under Michigan law. Although Wisconsin generally favors the enforcement of choice of law and forum selection clauses, the presumption of enforcement is not absolute. *See Drinkwater v. Am. Family Mut. Ins. Co.*, 2006 WI 56, ¶¶ 25–31, 290 Wis. 2d 642, 714 N.W.2d 568. These provisions are entitled to less weight when third party litigants are involved. *See Gallenberg Equip. Inc., v. Agromac Int'l, Inc.*, 10 F. Supp. 2d 1050, 1052–53 (E.D. Wis. 1998) (citing *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 328 (1981) (Stevens, J., concurring)). As Plaintiffs were not a party to the APA between Kubick and Superior, the choice of law provision is afforded less weight.

Nevertheless, "[a] court need resort to conflicts of laws rules only when the parties point to a difference among state laws which will make a difference to the outcome of the case." *Ziolkowski v. Caterpillar, Inc.*, 800 F. Supp. 767, 778 (E.D. Wis. 1992), *aff'd*, 996 F.2d 1220 (7th Cir. 1993).

4

The doctrine of corporate successor liability is substantially similar under both Wisconsin and Michigan law and neither party has identified any outcome determinative conflicts between the laws. As a result, I will apply Wisconsin substantive law. However, I will also discuss the relevant Michigan case law where useful.

**ANALYSIS**

**A. Successor Liability**

The general rule, accepted by most states including Wisconsin and Michigan, is that a corporation which only purchases the assets of another does not succeed to the liabilities of the selling corporation. *See Fish v. Amsted Ind., Inc.*, 126 Wis. 2d 293, 298, 376 N.W.2d 820 (1985); *Foster v. Cone-Blanchard Mach. Co.*, 460 Mich. 696, 702, 597 N.W.2d 506, 509 (1999).

Wisconsin[1] recognizes four exceptions to the general rule: (1) when the purchasing corporation expressly or impliedly agreed to assume the selling corporation's liability; (2) when the transaction amounts to a consolidation or merger of the purchaser and seller corporations; (3) when the purchaser corporation is merely a continuation of the seller corporation; or (4) when the transaction is entered into fraudulently to escape liability for such obligations. *Leannais v. Cincinnati, Inc.*, 565 F.2d 437, 439 (7th Cir. 1977) (applying Wisconsin law). The exception at issue in this case is the "mere continuation" theory of liability. In general, the mere continuation

---

[1] Michigan recognizes five exceptions to the general rule: (1) where there is an express or implied assumption of liability; (2) where the transaction amounts to a consolidation or merger; (3) where the transaction was fraudulent; (4) where some of the elements of a purchase in good faith were lacking, or where the transfer was without consideration and the creditors of the transferor were not provided for; or (5) where the transferee corporation was a mere continuation or reincarnation of the old corporation. *See Foster*, 460 Mich. at 702. The Wisconsin exceptions are substantially similar to Michigan's as Wisconsin's fourth exception essentially addresses Michigan exceptions three and four.

5

exception requires "a common identity of the officers, directors and stockholders in the selling and purchasing corporations." *Id.* at 440. However, "courts will impose successor liability without continuity of ownership if there is evidence that the transaction was more than a mere asset sale or if there is evidence of the absence of an arm's length transaction." *Gallenberg Equip., Inc. v. Agromac Intern., Inc.*, 10 F. Supp. 2d 1050, 1056 (E.D. Wis. 1998).

Michigan expanded upon the mere continuation exception in *Turner v. Bituminous Cas. Co.* by establishing the continuity of enterprise doctrine.[2] 397 Mich. 406, 244. N.W.2d 873 (1976). *Turner* established four guidelines to determine if there is sufficient continuity between the predecessor and successor corporations to impose liability: (1) basic continuity of the enterprise of the seller corporation, including retention of key personnel, assets, and general business operations; (2) the seller corporation ceased ordinary business operations, liquidated, and dissolved soon after the distribution of consideration received from the buying corporation; (3) the purchasing corporation assumed those liabilities and obligations of the seller ordinarily necessary for the continuation of the normal business operations of the seller corporation; and (4) the purchasing corporation holds itself out to the world as the effective continuation of the seller corporation. *Id.* at 883–84. The presence of all the elements is not necessary to establish a *prima facie* case of continuity of enterprise. *Foster*, 460 Mich. at 706. However, the continuity of enterprise doctrine "applies only when the transferor is no longer viable and capable of being sued . . . . The thrust of the decision in *Turner* was to provide a remedy to an injured plaintiff in those cases in which the first corporation 'legally and/or practically becomes defunct.'" *Foster*, 460 Mich. at 705 (citing *Turner*,

---

[2] Wisconsin declined to adopt *Turner*'s expansion of the mere continuation doctrine. *Fish*, 126 Wis. 2d at 313.

6

397 Mich. at 419).

Plaintiffs allege that Kubick's actions following the asset purchase sale demonstrate that Kubick is simply a continuation of the Superior enterprise and, that as a result, subject Kubick to successor liability. Kubick purchased nearly all of Superior's assets, including the hangers, furniture/fixtures/equipment, fuel farm, dealerships, fuel, and customer lists. (ECF No. 31-1, pp. 2.) On May 14, 2014, Kubick sent a letter informing McGraw and possibly other Superior customers of the asset sale, soliciting their business in the future, and indicating that "a majority of Superior Aviation's employees were retained . . . ." (ECF No. 59-13.) One of those employees was former Superior president Bruce Varda, who worked as Kubick's Director of Operations for approximately 11 months before Kubick found a suitable replacement. (ECF No. 59-8, pp. 3.) Varda testified at his deposition that he was not an officer at Kubick during his limited employment and that his position was required by the FAA. (*Id.*) Varda further testified that he originally offered Kubick the chance to purchase the entirety of Superior's business, but the total price was negotiated down and Superior retained some of its services. (*Id.*) Plaintiffs also assert that McGraw's logbooks were stored at the Kubick hanger and that Dupras updated the logs as an employee of Kubick.

Based on the undisputed evidence, Kubick was not a "mere continuation" of Superior following the asset purchase. Continuity of ownership between Kubick and Superior did not exist. Although Kubick hired Varda after the asset sale, the position was required by the FAA and was part-time. Varda may have been the president at Superior, but he was not an officer at Kubick. Varda was also replaced after only eleven months once Kubick was able to find a suitable replacement. There is no evidence there was any common identity of the officers, directors, and stockholders in Superior and Kubick. At no point in time prior to or after the sale did Kubick own

7

any Superior stock. Nor is there any evidence that the transaction was more than a mere asset sale or that there was an absence of an arm's length transaction. The parties bargained as to the final price and to what assets would be included. (ECF No. 59-8, pp. 3.)

Plaintiffs contend that summary judgment is not appropriate because Kubick failed to include the operating agreement from the APA in this case and, thus, we don't know what it may have shown with respect to the parties' post-closing relationship. But apparently, Plaintiffs never sought the operating agreement or, if they did, never filed a motion to compel in order to obtain it. It is Plaintiffs' burden, not Kubick's, to demonstrate that there exists evidence from which a reasonable jury could find in its favor. *See Olendzki v. Rossi*, 765 F.3d 742, 749 (7th Cir. 2014) ("At the summary judgment stage of a proceeding, a plaintiff must 'put up or shut up' and 'show what evidence [he] has that would convince a trier of fact to accept [his] version of events.'") (quoting *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir.2007). Speculation about what might be in an operating agreement is not evidence. As a result, there is no evidence the transaction was more than a mere asset sale as reflected in the APA.

Even if Michigan law controlled, there is also no evidence from which a reasonable jury could conclude that the Michigan continuity of enterprise expansion applies. While Kubick purchased the majority of Superior's assets and retained several employees, Superior did not cease operations following the sale. Tim Spreen continued to be employed at Superior and contacted Dupras after McGraw's accident to inquire about the status of the plane's logbooks. Significantly, Superior remains viable and capable of being sued. Plaintiffs brought claims against Superior and Superior possesses liability insurance. As noted in *Foster*, "[t]he thrust of the decision in *Turner* was to provide a remedy to an injured plaintiff in those cases in which the first corporation 'legally and/or

8

practically becomes defunct.'" 460 Mich. at 705 (citations omitted). This is not that kind of case and thus the Michigan continuity of enterprise expansion does not apply.

Under these circumstances, I conclude that Kubick's motion for summary judgment on the issue of successor liability should be granted. Regardless of whether Wisconsin or Michigan law controls, there is no evidence from which a reasonable jury could conclude that Kubick was a mere continuation of Superior. Kubick did not purchase Superior's liabilities under the APA. Because the Plaintiffs failed to establish that this case is entitled to an exception to the general rule of successor liability, Kubick's motion for summary judgment will be granted.

**B. Motion to Amend**

Also before the Court is Plaintiffs' 7(h) motion to amend the complaint by adding a negligence cause of action against Kubick. Plaintiffs claim they did not learn of the exact details of the transfer of ownership to Kubick from Superior until the completion of discovery and that this claim addresses the recently learned information. Kubick did not file a response to Plaintiffs' motion, but argued in its Reply Brief in Support of Summary Judgment that the motion should be denied *sua sponte* under Federal Rule 12(b)(6) for the failure to state a plausible cause of action.

Parties may request leave to file an amended complaint and the court should "freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The decision whether to allow the amended complaint is discretionary and a court should grant a motion to amend absent a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment." *Foman v. Davis*, 371 U.S. 178, 182 (1962). Leave to amend should be denied where the amendment would be futile. *McCoy v.*

9

*Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir.2014). A proposed amendment is futile when the new pleading would not survive a motion to dismiss. *Id.* at 685.

Plaintiffs' proposed cause of action rests upon the contention that Kubick was negligent by failing to provide McGraw his plane's logbooks and notify him that they were not complete prior to his crash. The proposed amended complaint alleges that Kubick failed to return the log books to McGraw prior to the crash despite several requests that it do so. Plaintiffs fail to explain, however, how failing to return the log books, or even the backdating the entries for the work performed by Dupras constitutes negligence or contributed to the crash. Assuming as true for the purposes of this motion that McGraw's logbooks were stored in Superior's hanger and Kubick took possession of the hanger on April 18, 2014, that possession does not result in negligence by Kubick. There is no dispute that all of the work done on McGraw's airplane was completed by April 10, 2014—more than a week before Kubick's purchase of Superior's assets became final. Implicit in an asset purchase agreement is the assumption that the transferor corporation has completed its work prior to the sale in accordance with a standard of professional care. A successor corporation cannot reasonably be expected to review every transaction completed prior to the sale to double-check whether the transaction was done in conformity with industry standards.

Even if Kubick had the knowledge and obligation to warn McGraw that the logbooks were not updated, Plaintiffs' claim fails to connect Kubick's inaction to McGraw's injury. McGraw knew that the logbooks were not with his plane—he requested them when he picked up the plane on April 11 and called Dupras on at last two occasions asking for them. McGraw was flying to what was formerly the Superior hanger on the day of his accident. McGraw continued to fly his plane despite knowing he did not have the updated logbooks and the accident occurred after only five hours of

10

flight time. For all of these reasons, Plaintiffs' amended complaint fails to state a claim upon which relief can be granted and their motion for leave to file an amended complaint will be denied as futile.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Kubick's motion for summary judgment (ECF No. 28) is **GRANTED**. Plaintiffs' motion to amend the complaint (ECF No. 54) is **DENIED**.

Dated this   3rd   day of January, 2017.

 s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
